## Hoffman et al. v. Hoffman.

### Dec. 6, 1940.

Conrad G. Matz for appellants.

Benton, Benton, Smith & Luedeke and **John J. Cooney** for appellee.

Opinion of the Court by Judge Fulton—Affirming.

The appellee, styling herself Dorothy Hoffman, filed this action praying that she be allotted dower and a widow's statutory allowance in the estate of Emil Hoffman, who died a resident of Newport in Campbell County on September 5, 1937, leaving a will, executed in 1923, by which he devised all of his property to his sister, the appellant, Alma Hoffman. It was alleged by the appellee that in the year 1927 she entered into a common law marriage with Emil Hoffman in Ohio and that from the time thereof she lived with him as his wife and that they held themselves out to the world as husband and wife until his death; that the marital relation continued in the state of Ohio and later in the state of Kentucky to which she and her alleged husband moved.

She also pleaded the law of the state of Ohio to the effect that a common law marriage was there valid. Issue was formed and heard before the chancellor who granted the appellee the relief sought and this appeal is from that judgment.

The law of the state of Ohio was proven by a practicing attorney of that state and there is no controversy between the parties as to that law. It is agreed in the briefs that a common law marriage is recognized in the state of Ohio if the marriage agreement is mutual; between parties that are competent to contract a marriage; is in praesenti and not in futuro and is followed by cohabitation as husband and wife with a holding out by the parties in their social circle that they are married. It was further proven that under the Ohio law the marriage may be proven by evidence of cohabitation and conduct of the parties. The only question confronting us is whether or not the evidence was sufficient to establish a common law marriage under the law of Ohio.

The appellee was a professional singer and in the year 1927 lived in an apartment on Wade Street in Cincinnati, while Emil Hoffman lived with his sister, the appellant, Alma Hoffman at No. 9 Lewis Street in that city, although it appears that on occasions in the early part of the year he occupied a room in the apartment adjoining that of appellee.

Three witnesses testified that in July, 1927, there was a party in the appellee's apartment and that during

the course of the party numerous joking remarks were made with reference to whether Dorothy and Emil were married; that finally Dorothy and Emil went into the kitchen of the apartment and stayed a while; that they then came back in and Emil told her to show her ring and the guests would know they were married and that Dorothy thereupon said that she and Emil were married and exhibited a ring. While the testimony of these witnesses differs slightly as to the exact details and the actual words spoken by Dorothy and Emil, it has every appearance of being true. These three witnesses, as well as several others, testified that from then on Dorothy and Emil lived together in her apartment until they moved in the latter part of the year 1927 to a residence on Second Street in Newport, Kentucky, although these witnesses did not pretend to know that Emil stayed with her at that apartment all the time. These witnesses further testified that Emil introduced her as his wife after that night and while they were living in Cincinnati. For instance, a witness, Mrs. Henry Morgenthau, stated that she heard Emil, in the summer of 1927, tell her husband that he and Dorothy were married, and another witness, Mrs. Henry Baer, testified that at about the same time she heard Emil say that he and Dorothy were married and heard him introduce her as his wife and that she, the witness, also introduced her in the same manner and that all those in their social circle considered them as husband and wife.

In the month of October, 1927, Dorothy moved to Newport, Kentucky, and rented an apartment on Second Street in the name of Dorothy Kline from John Anderson, who testified as a witness. This apartment was on the second floor and Anderson lived on the first floor and Dorothy furnished him his meals for the rent. While this witness stated that he did not know whether Dorothy and Emil occupied the same room or lived together, it is rather apparent from a careful reading of his testimony that they were living together and that Emil spent at least a considerable portion of the time at that apartment. Other witnesses testified that from October, 1927, appellee and Hoffman lived together as husband and wife and were so regarded by the members of their social circle in Newport although such evidence is not as strong as is evidence to the effect that they lived together as husband and wife during the years from 1931 until Emil's death.

In the month of February, 1931, Emil purchased a house on New Linden Road in Newport and the evidence is overwhelming that from then on he and appellee lived together and held themselves out to be husband and wife. Witnesses who were very intimate with them so testified and stated that they were amazed to learn after Emil's death that they had never been married. Of course, evidence that these parties lived together as husband and wife in Kentucky could not establish a common law marriage, which is not recognized in Kentucky, but unquestionably such evidence is competent as corroboration of evidence that they lived together as husband and wife in the state of Ohio before moving to Kentucky. It is merely directed to showing the continuation of a status which other evidence showed to have existed in Cincinnati prior to the removal of these parties to Kentucky.

The appellant and a man who boarded in her home on Lewis Street in Cincinnati and who was a very intimate friend of hers testified with great positiveness that Emil made his home with appellant at No. 9 Lewis Street in Cincinnati continuously until the year 1935, and appellant stated that three weeks before her brother's death she introduced Dorothy as Miss Kline and appellee made no objection thereto. These witnesses stated that they never heard or knew of any claim that appellee and Hoffman were husband and wife. From this conflict in the evidence we are constrained to believe that Emil spent a portion of his time at appellant's home on Lewis Street and that this portion of time diminished with each passing year after 1927. The evidence so overwhelmingly establishes that appellee and Emil were living together as husband and wife in Newport for some years prior to his death that it is wholly irreconcilable with appellant's evidence that he constantly made his home with her in Cincinnati during these years.

Appellant's brother who resided in Chicago, as well as two or three other witnesses, testified that after Emil's death Dorothy told them that she and Emil were not married, and appellant's brother also stated that on receipt of a telegram as to his brother's death he talked from Chicago over the telephone to Dorothy and she informed him that she and Emil had been married five years. Appellee, in explanation of this testimony, testi-

fied that she meant that she and Emil had not been married by an official and that she merely told the brother over the telephone that they had bought the house where they were living five years after they married.

Evidence for the appellant showed that the telephone at the apartment on Wade Street in Cincinnati and at the apartment on Second Street in Newport was in the name of Dorothy Kline. It was also shown that Hoffman was registered as a voter in Cincinnati from No. 9 Lewis Street (the home of appellant) and that he actually voted in Cincinnati up to the year 1933. His card was taken out in the year 1936 because he had not voted since 1933. A hospital record in the year 1930 showed the residence of Emil as No. 9 Lewis Street, Cincinnati, and a notebook kept by him showed the same address although the date this was made does not appear. It was also shown that two mortgages executed by him in the year 1931 were executed as a single man. On the opposite side of the picture it was shown that mortgages executed by him on the Linden Avenue property in the year 1936 were signed by appellee as his wife and his social security card filled out in the same year designated his dependents as a wife and sister and designated his "wife" as his beneficiary or nearest relative. He also made applications for loans to a household finance company and these applications were signed by appellee as his wife.

One thing to be gathered as a certainty from the evidence is that for sometime prior to his death Emil Hoffman did regard the appellee as his wife. The only real question to determine is whether or not this recognition dated as far back as 1927 when he and appellee were living in Cincinnati. As heretofore pointed out the narrative of the witnesses is very convincing that from the month of July, 1927, these parties did live together and hold themselves out to be man and wife. While appellant and one witness flatly deny that Emil lived with Dorothy on Wade Street, and while they testify that he lived at No. 9 Lewis Street constantly up to the year 1935, it is rather significant that no person living in the neighborhood of No. 9 Lewis Street was called as a witness on this point. If Hoffman had continuously resided at No. 9 Lewis Street until the year 1935, undoubtedly witnesses could have been called to establish this fact. It is true that Hoffman's voting record

in Cincinnati, showing his residence as No. 9 Lewis Street, and the hospital record and notebook also showing this residence, are contradictory in a way of the direct testimony of appellee's witnesses, still he was engaged in business in Cincinnati and it seems rather natural that he would prefer to designate his address as Cincinnati rather than Newport although his actual home was in the latter city. Nor do we regard the fact that the residence on Second Street in Newport was rented in the name of Dorothy Kline and that the telephone was kept in her name as a very significant fact in contradiction of appellee's claim. Since she was a professional singer we see nothing unusual in these circumstances. The direct and positive testimony of the witnesses for appellee showing cohabitation between these parties and a holding out of themselves as man and wife in Cincinnati, when taken in connection with the overwhelming and record testimony that for sometime prior to Emil's death he regarded the appellee as his wife, is sufficient in our opinion to establish the common law marriage and overcome the apparent contradiction contained in the records indicating Hoffman's home to have been at No. 9 Lewis Street.

The true panorama of the relation existing between this man and woman, as revealed to us by all the evidence with its apparent contradictions, is that from the month of July, 1927, they lived together as man and wife and were so regarded by their close associates, although the appellee continued to be known by her maiden name. In the beginning this relation was more or less kept secret from Emil's family and his business associates, but with the progress of time it became more open and less effort was made at concealment although, possibly for business purposes, Emil continued to designate No. 9 Lewis Street, Cincinnati, as his address. After moving to Newport their entire circle of acquaintances in that city regarded them as man and wife, though probably his sister and those with whom he had business contacts in Cincinnati did not know his manner of life. In the latter years of his life all efforts at concealment from his Cincinnati associates and family were abandoned and he published to the world that appellee was his wife by thus designating her in public records. This was, in effect, the conclusion reached by the chancellor and, we think, correctly so.

Judgment affirmed.